Good morning, Your Honors. Thank you. Carolyn Wiggin from the Federal Public Defender's Office in Sacramento. And I would like to reserve two minutes for rebuttal, please. Your Honors, I'd like to start by talking about the procedural default question in this case. I believe the state and the court below's source of its argument that the Dixon Bar is independent of federal law derives from the California Supreme Court's Robbins decision. And I think it's important to actually read what the Robbins decision says about the Dixon Bar. I've brought in a copy, and I'm reading from, this would be 18, Cal 4, 770, 814. In the Pacific Reporter, it's page 340. First of all, they say, after they've discussed Clark at length, they say, we do not address herein the merits of the claim raised in the petition, nor do we address herein the application of any procedural bar other than that of timeliness, of untimeliness. So I think that they're clearly limiting this holding to Clark, which is the untimeliness bar, which was not raised in Mr. Vaughn's petition. And then moving on to footnote 34, which also begins on the pages I cited, they say, when in our orders we impose the bars of Dixon or Waltrius, this signifies that we have concluded that none of the four exceptions set out in In re Harris are applicable. And earlier in the decision, they've talked about the four In re Harris bar, exceptions to the Dixon and Waltrius bars, and one of those includes state and federal constitutional questions. So in my mind... Assuming for a moment that it is independent. Let's just say that's what the Cal Supreme Court was really trying to do, saying, we're out of this federal nonsense. We're not going to play games with the Ninth Circuit anymore. It's independent. Assuming that's the case has to go back down to district court for the Bennett v. Mueller test of whether that Dixon bar, in fact, is adequately, is regularly applied. And one point that I don't think either myself or opposing parties would agree on is that, if your Honor's    talked about a lot in the briefs is that when you go back to the findings and recommendations that were adopted by the district judge, the magistrate judge actually held that if there was a Dixon default, it occurred in 1997 when Mr. Vaughn failed to raise this particular challenge we've raised now in direct appeal. That's a year before Robbins came out. So I think there's a problem with the Robbins argument, even if you do find it's an adequate independent state ground. And then, of course, there's the factual question of whether the California Supreme Court is actually consistently applying this, which is a question of fact that Mr. Vaughn would need counsel on remand to help him resolve. It's a funny kind of question of fact. Suppose we looked at all of the cases. Suppose we did. I mean, just because we don't have anything better to do with our time. We look at all the California cases that have come out since then, and we find that absolutely they have never deviated from that. Suppose we did that. Then does it have to go back to the district court for a factual determination of some kind? What kind? Your Honor, that hadn't occurred to me that this Court could take judicial notice. I still think counsel would have to work on that, of how the California Supreme Court was deciding cases that raised a possible Dixon bar back in 97. You know, we'd have to pick an adequate random sample, and someone would have to go there. So it could happen at this Court because you have the power to take judicial notice. Then I think this Court could resolve that legal question. But either way, I think there would be further proceedings. Is the critical date 1997 or when the California Supreme Court decided in its postcard denial? Right. I mean, I think that the district court's reasoning in this case is persuasive that the Dixon bar really happens when a decision not to raise something on direct basis. And what the district court said is although it was announced in 2001 or 2000 when the Cal Supremes denied his petition, in fact, it occurred in 97. I think that makes sense. They cite some California cases interpreting the Dixon bar saying that is the actual date of default on these claims. But what have we said about what the actual date is? Well, again, I'm going to grab the FNRs. And the district court there cites California question. What has the Ninth Circuit said about the pertinent date? Your Honor, I haven't seen any opinions on point on that. I think the district court looked at California cases and found it was the date of default. I could certainly submit supplemental briefing, but I haven't found any Ninth Circuit cases deciding which date the Dixon default occurs. To my knowledge, there isn't case law on that in the Ninth Circuit. What relevance are – is it possible that there may be State court of appeal opinions that have addressed the issue? And if so, are they of any relevance in this analysis? I did look for State court of appeal decisions on this. If I could just go back to the table for a second. Your Honor, that's sort of what I thought, is that I didn't find any California court of appeal or Supreme Court decisions post Robbins, and I didn't look for any pre-Robbins addressing that question. So you didn't find any State court of appeal opinions or California court of appeals opinions that have addressed the issue post Robbins? That's correct. I didn't find any. Well, Vaughn addresses it. The Cal Supreme Court says Dixon – it applies, right? California says – The Dixon decision itself, is that – Sure. California says – And I have to say – By that time, California has decided Robbins, and California Supreme Court says it applies. That's all. It applies when you file your habeas. It applies, right? Well, that's when they announce it. Now, what the district judge did in this case is said it actually happens when – at the time you file your opening brief on direct appeal. I understand. So, again, this is something that kind of occurred to me recently as I was doing my final review, and I'd be happy to do supplemental briefing, but I did look at this at the end of last week, and I couldn't find any cases on point post Robbins. Did you want to reserve the balance of your time? Yes, Your Honor. Thanks. May it please the Court. Justin Riley on behalf of Appealing. Preliminarily, regarding the discussion you were having with counsel, I believe that it's independence that is gauged at the time of imposition of the bar, which is when California Supreme Court would have denied the habeas petition, and adequacy is gauged at the time of default. Now, In re Harris, which comes out of California Supreme Court, I have the site here, 5 Cal 4th, 813, established the adequacy of the Dixon bar for purposes of California, decided – excuse me – decided July 29, 1993, plead this court in Fields v. Calderon, 125 F. 3rd, 757 in 1997, said in terms of procedural default that the adequacy is gauged at time of the default, which would have been when appellant filed his direct appeal. With regard to the procedural default here, appellant failed to bring the sole claim of the jury instruction in his petition before the State courts. For this reason, the California Supreme Court denied his collateral review, citing to In re Dixon. Below, appellee at the district court argued that appellant's claim should also be barred from Federal review because of In re Dixon. The district court agreed and alternatively denied appellant's petition on that ground. Let me be clear on this point. It's appellee's position that appellant never met the burden of placing the procedural bar at issue in the district court. Bennett v. Mueller, which lays out the respective burdens for challenging the adequacy of the State bar, was decided March 4, 2004. The findings and recommendations were filed 20 days later on March 24, 2004. Now, appellant didn't bring any sort of attempt, any sort of supplemental briefing or request any extensions of time to challenge the procedural bar. I thought your brief said something like appellant wasn't given an opportunity to raise this in the district court. That wasn't clear, and I apologize for that. That's my alternative position, if this Court finds that, because, you know, he did, Bennett was filed after he filed this petition after. But it does just plain out say that, doesn't it? It doesn't say in the alternative. No, no, it doesn't. Did you bring Bennett to the attention of the district court or to the magistrate judge? No. It doesn't appear that the findings and recommendations mention Bennett at all. The answer was filed before. That wasn't my question, but did the State bring it to the attention of the magistrate judge or the district court judge before the final judgment was entered? No. I don't believe that's the State's burden, according to Bennett. No, I just mean to bring the case. The case of Bennett? Yes, to the attention of the district court. The State did not. So appellant didn't raise any objections to the findings, recommendations afterwards and to the State. I don't think that appellant has attempted to meet the burden of challenging the State bar. Well, what do you think would happen if we did send it back down as Judge Fernandez raised that issue with the Petitioner? According to Henry Robbins, I think it would. I'm sorry, to the district court? Yes. Suppose we remanded it back to the district court. Okay. For an adequacy determination. What would you envision as happening? I believe the district court would find it to be adequate. This Court and Bennett v. Mueller found it adequate. And what would you point to to help the district court make that determination? This Court and Bennett found the Clark bar to be adequate. And I believe that's independent. I'm sorry. To be adequate, I believe that I would point to In re Harris, which is what I just cited to the Court for the proposition that the California Supreme Court has declared in 1993 that this is the way that California is going to run their courts. We're not going to listen to claims not brought before the State courts on direct appeal. And I believe that mine would also be the my duty would be to respond to appellant's argument. It's appellant's burden to bring, even before the district court. And let me quote from that, which I have in my brief. Counsel, could you please address the merits of the claim in the event that the procedural bar does not prevent us from reaching that issue? Did I answer your question? Well, I was just ñ never mind. Go ahead. Answer, Judge Bronson's question. Appellant seems to be viewing this instruction in isolation. Or the instruction and the following instruction based on addressing the standard of proof for prior misconduct. Seems to be viewing those instructions in isolation. CALJIC 2.50.01 is correct. It informs the jury that they may infer appellant committed the charged crime if they find by a preponderance that he committed prior acts of misconduct. This is a permissible inference based on the correct standard of proof for prior misconduct. However, one must not take this instruction in isolation. In fact, the jury here was instructed pursuant to CALJIC 1.01, and that's in the additional materials I think the court received. Counsel, would you agree that in isolation the jury instruction could be interpreted as at least muddying the standard of proof for a conviction? If that were the only instruction that the jury received with regard to what they should find for a conviction? Yes. Sure. But that's not the only instruction they got. Also, this instruction doesn't inform the jury that they can reach any sort of ñ it doesn't ñ a verdict. It doesn't instruct the jury that they can find a verdict based on this evidence. But it was clarified to make it clear that this instruction alone was not to be used by the jury. Wasn't that an indication that the instruction might have been a little misleading to the jurors? I'm sorry. Wasn't this instruction clarified? It draws to me that the instruction was later amended. Right. Later amended. Amended. By CALJIC people. I'm sorry. I think that just means that it could have been written better if the California courts decided that they wanted to state the law differently. It doesn't mean that this instruction is incorrect. Was there a finding that given that this instruction was error? No. Counsel, if, just hypothetically, if one decided that, indeed, this instruction did undercut the burden of persuasion, which is normally beyond a reasonable doubt, that's the end, isn't it? We don't do any Brecht balancing then, do we? I think you do go to Brecht. Do we, even though that would be eliminating the burden beyond a reasonable doubt and under Sullivan, that's structural error? If you find that the instruction was error and undercut the beyond a reasonable doubt standard. That's what I said. That's what their argument is, I think. I believe so. I think that we look to Brecht to find whether or not the jury could have still come to the conclusion that. Brecht doesn't apply to structural error, though, does it? No, that's true. And if we said this, indeed, this, indeed, does what they say it does, that's structural, right? Okay. I'm just asking. Counsel, is it your recollection of the proceedings that the magistrate judge did not assume the giving of that instruction was erroneous? That's your recollection of the proceedings? That is my recollection. I believe that he found in context of the other instructions that it's. I think he found that it didn't violate due process, but that the giving of the instruction itself was erroneous. Counsel. You don't have to search. It's our position that the giving of the instruction was not erroneous because it told the jury that they could infer that the appellant did the crime, but they found that the evidence was true. In fact, in CALCHIC 2.90, the trial court instructed the jury that in case of a reasonable doubt, the appellant was entitled to the verdict of not guilty. What Supreme Court case are you relying upon to support your argument? The Supreme Court has not. Estelle v. McGuire lays out the general framework, but the Supreme Court has not addressed 2.50 or even 0.01 or even propensity evidence. Anything else? That's it? No. Thank you. I believe you had about two, a little less than two minutes. Thank you. I wanted to say a couple things in response on the procedural question and then talk about the merits. Your Honors, or my opposing counsel raised the argument that this Bennett test wasn't actually applied below. The parties didn't set out their allegations and proof in the manner called for by Bennett in this case. But if we look at the Bennett decision, in that case, the Petitioner and Respondent below did not follow the steps that this Court has now identified as the proper ones. The Petitioner below simply objected to the findings and recommendations but didn't attempt to show that Clark wasn't applied consistently. Similarly, in this case, our client was pro se. The decision did come out 20 days before the final judgment, but neither party raised it. He did, our client did object to the F&Rs. And I think at this point, as the Court did in Bennett, it just noted at the end neither party complied with this new test we've set forth. We're going to send it back down so they can comply with it. And if this Court felt that a question was raised about the consistency of application of Dixon, I think that would be the solution, or to handle it at this level, as you indicated. In terms of my opponent talked about Harris being his best case for the fact that by 93, Dixon was consistently applied. But if you look at Harris, at that time, as this Court noted in Park, Harris clearly included a Federal constitutional law exception to Dixon. So you could say that Harris says it's consistently going to be applied, but it includes a Federal law question at that point. And then finally, just briefly in terms of the merits, I know I have 10 seconds left. I think you're over your 10 seconds. You're over 10 seconds. Oh, okay. Well, I would just say that the leading Supreme Court case on this is Winship because this case really isn't about can propensity evidence come in at all, but can the burden of proof be shifted away from the defendant? What about Estelle, though, in terms of jury instructions and looking at all the jury instructions together? Well, I think in Estelle they found if you introduce propensity evidence with the defendant, Estelle upheld it. In this case, my argument is that not only did we not have a correct limiting instruction, we actually had an instruction that this propensity evidence can serve as proof beyond a reasonable doubt of the charged crime. And so in that sense, that's why I cite Winship as a part of my argument. Thank you so much. The matter will stand submitted. Thank you. Our next case for argument will be Stowe v. Murtishige. And prior to the previous cases, Young v. Merkel and Davis v. Adams are submitted on the briefs without argument. Erlene Watanabe. Thank you. Good morning, Your Honors.
judges: Fernandez, Paez, Rawlinson